IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| THOMAS CONWAY JONES, JR., <br><br> Plaintiff <br><br> VS. <br><br> KEITH JONES, *et al.*, <br><br> Defendants | NO. 1:08-CV-7 (WLS) <br><br> PROCEEDINGS UNDER 42 U.S.C. §1983 <br> BEFORE THE U. S. MAGISTRATE JUDGE |

# RECOMMENDATION

Pending in this *pro se* prisoner 42 U.S.C. § 1983 action are a motion to dismiss filed by defendant Leslie Linney (Tab #52), a motion for summary judgment filed by defendants Keith Jones and Elaine Hutto (Tab #58), and plaintiff Jones' motion to dismiss the complaint without prejudice (Tab #69).

This action arises out of events that transpired when plaintiff Jones was an inmate at Autry State Prison near Pelham, Georgia. All three defendants in this action are or were employed at Autry State Prison on April 25, 2007, when the circumstances leading to the filing of this lawsuit occurred. Plaintiff states that he was in a Level 3 Mental Health Supportive Living Unit on April 25, 2007. Upon leaving the shower and returning to his room he was attacked by three other inmates. While one inmate held a weapon to his throat, the other two took turns raping him. He was not able to report the incident until the next day whereupon he gave a written statement and was taken to the hospital in Camilla, Georgia where a rape kit examination was performed. Upon his return to the prison a blood sample was taken by the medical department to check for sexually transmitted diseases and he was placed in Administrative Segregation. (Tab #2, p. 4).

In his complaint Plaintiff maintains generally that he has been denied the mental health care and treatment he needs created by the emotional and mental trauma he suffers from the rape episode. He also alleges that as a result of the rape he suffers from Hepatitis C for which he is being denied needed medical treatment. All of inmate Jones's other claims initially brought in this action have been dismissed, leaving his allegation of deliberate indifference to a serious medical need, in violation of his Eighth Amendment rights, against Elaine Hutto, Keith Jones and Leslie Linney as the sole remaining cause of action in this suit. (Tabs #31, #39).

### *Motion to Dismiss filed by Defendant Linney (Tab #52)*

Defendant Linney asserts that plaintiff Jones failed to exhaust administrative remedies regarding the mental and medical treatment he received after the rape incident, and that the complaint as to her should be dismissed. 42 U.S.C.§ 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> *No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.*

*Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998).

According to the affidavits and other evidence submitted in support of this motion, Plaintiff Jones filed six grievances following the April 25, 2007 rape incident. (Exh. A. at ¶10 Tab #52). One of those grievances (No. 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) dealt with whether or not an electric razor was allowed in Plaintiff's segregation unit. (*Id.*); (Exh. B Tab #52). Another grievance (No. 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) was filed on May 17, 2007 and involved only complaints that plaintiff was in segregation while the three alleged rapists were in general population. (*Id.*); (Exh. C, Tab #52).

2

In the next grievance (No. 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), plaintiff requestd an internal investigation of the Department of Corrections and Ms. Linney. That grievance centered solely on the fact that plaintiff believed that the crime against him was not investigated and that he was still wrongly in segregation. (*Id.*); (Exh. D, Tab #52).  On or around December 20, 2007, just 22 days before the instant lawsuit was initially filed, plaintiff Jones filed Grievance No. 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 ("Applicable Grievance"), complaining for the first time about Ms. Linney's lack of medical treatment. (Exh. A. at ¶11 Tab #52); (Exh. E, Tab #52). The Applicable Grievance was denied by the Department of Corrections because plaintiff had been seen by mental health staff on numerous occasions. (Exh. A. at ¶11 ; Exh. F Tab #52). Plaintiff appealed on January 22, 2008, but then voluntarily dropped the grievance on February 21, 2008, prior to a ruling on the appeal. (Exh. A. at ¶11-12 Tab #52).  Plaintiff signed his original complaint on January 9, 2008, and it was filed on January 11, 2008 (Tab #2).

Plaintiff states that he was not required to comply with the procedures regarding exhaustion because sexual assaults and harassment are not grievable.  He is correct; however, the allegations regarding defendant Linney involve whether or not plaintiff Jones received adequate medical care after the rapes.  Therefore, plaintiff was required to comply with the administrative remedies available to him and was required to properly exhaust those remedies prior to filing suit.  He failed to exhaust his administrative remedies regarding the medical care defendant Linney did or did not provide to plaintiff Jones.

The clear mandate of *Alexander v. Hawk* is that a prisoner *must* exhaust the remedies available under an administrative remedy program before filing an action such as this. The court must follow the dictates of circuit law.  This circuit, in interpreting the PLRA, has determined that exhaustion is now a pre-condition to suit, and the courts can no longer simply waive those requirements where it is determined the remedies are futile or inadequate.  *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998).   Consequently, IT IS RECOMMENDED that the motion to dismiss filed by defendant Linney be **GRANTED**.

*Motion for Summary Judgment Filed by Defendants Jones and Hutto (Tab #58)*

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp*., 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting *Horn ex rel. Parks v. Madison Co. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is . . . true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted). To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury. *Hill*, 40 F.3d at 1186; *Harris*, 21 F.3d at 393-94 (11th Cir.1994).

The medical care provided to an inmate must be reasonable. *Patterson v. Riddle*, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106. *See also Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991); *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D. Ga. 1980); *Hawley v. Evans*, 716 F. Supp. 601, 603 (N.D. Ga.1989).

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Murphy v. Turpin*, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005), citing *Hamm*, 774 F.2d at 1575. "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Id.*

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned, however, that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle* at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A Section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle, supra*, at 107.

6

At all times relevant to this lawsuit, defendant Elaine Hutto was the Health Services Administrator at the prison, and defendant Keith Jones was a Deputy Warden. They have submitted evidence that they were not deliberately indifferent to plaintiff Jones' medical and mental health needs in the form of their affidavits and plaintiff's medical records (Tab #58).

Based on the Georgia Department of Corrections' ("GDOC") established procedures for the medical treatment of male inmates who alleged that they have been victims of sexual assault, plaintiff Jones was seen by the medical department at Autry State Prison on the same day he reported the incident. Per the GDOC's protocol, he was sent to the Mitchell County Hospital to receive a medical and rape kit evaluation, which were administered that day. Inmate Jones also had his blood drawn that same day to test for hepatitis and HIV, pursuant to the GDOC's procedures. (Exhibit C, Affidavit of Elaine Hutto;  Exhibit D, Affidavit of Dr. William Smith Tab #58).

Plaintiff Jones' medical evaluation did not reveal any injuries or other medical conditions that required additional care, so a follow-up appointment with Dr. Smith was unnecessary. However, the results of inmate Jones's blood tests revealed that he was reactive for antibodies to the hepatitis C virus ("HCV"). (*Id.*). The GDOC also has a protocol for the screening, treatment and evaluation of inmates with HCV. (*Id.*). Inmate Jones was treated pursuant to this protocol. (*Id.* ).

Although the results of plaintiff Jones' April 26, 2007 blood tests revealed that he was reactive for HCV antibodies, the level indicated by the blood test, 23.00 H, indicated that he was infected with HCV *prior* to his alleged rape— not as a result of it. In addition, at the time he was examined, inmate Jones did not complain of or demonstrate any symptoms of HCV. Simply because inmate Jones's HCV antibody test was reactive, it did not mean he had an active HCV infection. (*Id.*). Per GDOC protocol, a positive HCV antibody test only indicates either a past or present infection or represents a false positive screening test.

To determine the patient's current status, additional testing is necessary. Specifically, a Quantitative HCV RNA viral load test should be performed. This test was administered on inmate Jones on August 6, 2007 and the results were undetectable. (*Id.* ). Per GDOC protocol, if the HCV viral load is undetectable, an additional test should be ordered to determine if the inmate had a past HCV infection or if the antibody test was a false positive. (*Id.* ). On September 10, 2007, inmate Jones was administered an HCV antibody test with reflection to RIBA. This test indicated that inmate Jones's initial HCV antibody test was not a false positive. Rather, due to the fact that inmate Jones had no detectable virus, this test indicated that inmate Jones had a HCV infection in the past, but that this infection had been resolved. (*Id.* ).

Pursuant to GDOC protocol, to confirm this finding, another HCV viral load test was to be administered in six (6) months. On April 24, 2008, after being transferred to another institution, inmate Jones was again administered an HCV viral load test. These test results were again undetectable, confirming that any infection he once had was resolved. *(Id.)*. Moreover, during the entire time inmate Jones was at Autry State Prison, he did not complain of or exhibit any symptoms of HCV and his liver enzymes were tested on three different occasions after his first HCV test. These tests each showed inmate Jones's liver enzymes in the normal range. (*Id.* ). Per GDOC protocol, patients with normal liver enzymes who otherwise do not demonstrate symptoms of HCV generally will not be referred for treatment, but continue to be monitored. (*Id.*). During his time at Autry State Prison, inmate Jones did not have an active or treatable HCV infection. (*Id.*).

Once it was reported that plaintiff Jones had allegedly been raped on April 26, 2007, under Georgia Department of Corrections' SOP, defendant Deputy Warden Jones was responsible for making sure that plaintiff saw medical staff and that he was referred to a mental health counselor. In addition, after inmate Jones' or any inmate's initial visit to a medical or mental health professional, Deputy Warden Jones' responsibility was to ensure that the orders of those professionals were carried out. (Exhibit B, Affidavit of Keith Jones, Tab #58).

According to plaintiff Jones' Mental Health Records, he was seen by a mental health counselor on April 27, 2007, and refused to consent to be evaluated by a mental health professional. He was seen at least twice more by a mental health counselor shortly thereafter, on May 3, 2007 and May 15, 2007, but still refused to consent to an evaluation of his sexual assault allegation. (Hutto Affid., Tab #58).

It is noted that Plaintiff Jones did not specifically respond to the motion for summary judgment. Rather, he filed a motion to dismiss the action *without prejudice* because of his stated inability to adequately respond to the motion and his lack of knowledge in the law. Defendants Jones and Hutto, on the other hand, have submitted evidence that plaintiff Jones *did* receive adequate medical care. It may not have been to the extent that plaintiff would have liked; however, he did receive both medical care and mental health care after his rape. A Section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983). Plaintiff has not rebutted the evidence submitted by defendants to show anything more than conclusory allegations of deliberate indifference.

9

Defendants Jones and Hutto also assert that plaintiff Jones failed to exhaust available administrative remedies prior to the filing of this lawsuit.  As noted above, 42 U.S.C.§ 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," *Alexander v. Hawk*, *supra*.

On or around December 20, 2007, shortly before the instant lawsuit was initially filed, plaintiff filed Grievance No. 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 ("Applicable Grievance") complaining for the first time about his lack of medical treatment. (Exh. A. at ¶11 Tab #52); (Exh. E, Tab #52). The Applicable Grievance was denied by the Department of Corrections because plaintiff had been seen by mental health staff on numerous occasions. (Exh. A. at ¶11 ; Exh. F Tab #52). Plaintiff appealed on January 22, 2008, but then voluntarily dropped the grievance on February 21, 2008, prior to a ruling on the appeal. (Exh. A. at ¶11-12 Tab #52).  Plaintiff signed his original complaint on January 9, 2008, and it was filed on January 11, 2008 (Tab #2).

The clear mandate of *Alexander v. Hawk* is that a  prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this.  Given these circumstances, the undersigned  believes that dismissal of these claims against defendants is mandated  for failure to exhaust administrative remedies.  The court must follow the dictates of circuit law.  This circuit, in interpreting the PLRA, has determined that exhaustion is now a pre-condition to suit, and the courts can no longer simply waive those requirements where it is determined the remedies are futile or inadequate.  *Alexander v. Hawk*, at 1326 (11th Cir. 1998).

For the foregoing reasons, IT IS RECOMMENDED that the motion for summary judgment filed on behalf of defendants Hutto and Jones be **GRANTED.**

*Plaintiff's Motion to Dismiss Without Prejudice (Tab #69)*

Plaintiff Jones filed this motion to dismiss the action *without* prejudice. However, the filed this motion *after* defendants had filed their motions to dismiss or motions for summary judgment. Consequently, the defendants agree that the action should be dismissed but instead argue that the dismissal should be *with* prejudice.

Plaintiff essentially argues that this action should be dismissed without prejudice because the court is biased against him and because he does not have the legal knowledge necessary to successfully prosecute this action without help from counsel which has been denied him. In light of the recommendation above to grant the motions filed by defendants, IT IS RECOMMENDED that plaintiff Jones' motion to dismiss without prejudice be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, **WITHIN FOURTEEN (14) DAYS** of receipt thereof

**SO RECOMMENDED**, this 5th day of FEBRUARY, 2010.

CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE